IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARY HAMEL-SCHWULST,
      Plaintiff,

vs.                                  Case No.: 3:08cv529/MCR/EMT

JEFFEREY P. NEGROTTO, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the court on Defendant MERS' Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) and (6) or Alternatively Motion to Transfer Venue Under 28 U.S.C. § 1406(a) and Supporting Memorandum (Doc. 138) and Defendants Universal Surety of America and The Continental Insurance Company's Motion to Dismiss Plaintiff's Third Amended Complaint or Alternatively Motion to Transfer Venue (Doc. 145). Plaintiff has not responded in opposition to either motion.

      Plaintiff, proceeding pro se, initiated this action by filing a civil complaint under 28 U.S.C. §§ 1331 and 1332, alleging common law claims of fraud, misuse of a notary seal, and alteration of a security instrument, as well as violations of the federal Real Estate Settlement Procedures Act of 1974 (RESPA), codified at 12 U.S.C. §§ 2601–2617 (Doc. 1). Plaintiff subsequently filed an amended complaint (Doc. 12). Five months later, Plaintiff filed a motion to again amend her complaint, which the court granted (*see* Docs. 101, 106). Plaintiff filed a second amended complaint (Doc. 120), but it did not comply with the Local Rules of this court; therefore, the court notified Plaintiff of the deficiencies and directed her to file a third amended complaint (*see* Doc. 124). Plaintiff then filed her third amended complaint in which she asserts her original federal and common law claims, as well as an additional claim of violation of the Mississippi Consumer

Mortgage Protection Act and violations of the federal Truth in Lending Act (TILA), codified at 15 U.S.C. § 1601 *et seq.* (Doc. 133 at 11, 12, 14).

Plaintiff's claims arise from a real estate transaction that occurred on November 26, 2007, in Gulfport, Mississippi, involving real property located at 242 Woodman Avenue, Pass Christian, Mississippi (*see* Doc. 133 at 5–11; *see also* Doc. 1, Exhibits).[1]  At the closing, Plaintiff signed a promissory note and construction loan security instrument to finance construction of a modular home on the Woodman Avenue property (*id.* at 5–6; *see also* Doc. 1, Ex. A).  Country Place Mortgage, Ltd (Country Place) is the lender named in the security instrument, and Defendant MERS is the named nominee for Country Place (Doc. 133 at 5; Doc. 1, Ex. A).  Defendant U.S. Title & Real Estate Closing Services, Inc. (U.S. Title) was the closing agent and is named as trustee of the real property in the security instrument (Doc. 133 at 5, 8; Doc. 1, Ex. A).  Defendant Negrotto, president of U.S. Title, acted as closing agent at the closing on November 26, 2007, and notarized Plaintiff's signature on several of the closing documents, including the security instrument and promissory note (Doc. 133 at 5, 8; Doc. 1, Ex. A).  Additionally, Defendant Negrotto obtained title insurance through Defendant WestCor Land Title Insurance Company (Doc. 133 at 5, 9).

Plaintiff claims that Defendant Negrotto and his employees committed several unlawful acts and omissions with respect to the closing.  Plaintiff alleges Negrotto had a duty to inspect the Woodman Avenue property prior to obtaining title insurance and conducting the closing to determine whether construction had been completed, but he failed to do so (Doc. 133 at 5, 6, 8).  She additionally alleges that after the closing, Negrotto returned to his office in Navarre, Florida, and two of his employees, one of whom is Defendant Dawn Effler, signed the security instrument as witnesses to Plaintiff's signature, even though they did not actually witness her signature (*id.* at 8, 11; *see also* Doc. 1, Ex. B).  Defendant Negrotto then affixed his notary seal to the security instrument and sent it to Harrison County, Mississippi for recording (*id.*).

Plaintiff claims that Defendant Negrotto's notary commission for the State of Mississippi was invalid because he was not domiciled in Mississippi at the time he obtained his commission (Doc.

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

133 at 6–8). Plaintiff asserts Negrotto knew or should have known that his Mississippi notary commission was invalid, and he misrepresented his legal authority to notarize documents at the closing (*id.* at 7, 9, 10). Additionally, Plaintiff asserts Negrotto notarized the closing documents despite his knowledge that the security instrument incorrectly identified the trustee as U.S. Title, instead of its legal name U.S. Title and Real Estate Closing Services, Inc., as well as his knowledge that he could not lawfully notarize the closing documents in light of his financial interest in U.S. Title (*id.* at 9, 11). Plaintiff claims that Negrotto violated TILA and RESPA by failing to provide her with a notice of a right to cancel and failing to provide her with a conformed copy of the executed and recorded security instrument, thereby entitling her to rescind the security instrument (*id.*).

Plaintiff alleges that in March of 2008, two months prior to the due date of her first payment on the loan, Country Place requested that she sign a modification agreement, apparently to convert the construction loan to a permanent loan (it appears that issuance of FHA mortgage insurance depended upon the parties' executing the loan modification agreement) (Doc. 133 at 8). Plaintiff states she notified Country Place and Mr. Negrotto that she refused to sign the modification agreement unless the original security instrument and promissory note were re-executed "in accordance with law" (*id.*). She states Country Place and U.S. Title refused to re-execute the original loan documents and threatened foreclosure in an effort to force her to sign the modification agreement (*id.*). Plaintiff states this conduct caused her to default on the loan, which resulted in the commencement of foreclosure proceedings by MERS and increased her indebtedness to Country Place by $42,000.00 for attorney's fees (*id.* at 8, 10, 12).

Plaintiff names Universal Surety of America (Universal) as a Defendant because it issued a notary public surety bond in the amount of $5,000.00 for Negrotto's Mississippi notary commission (*id.* at 6, 10). She states she filed a claim with Universal in January of 2009, after initiation of this lawsuit, but Universal failed to promptly investigate and settle her claim of fraud (*id.* at 9, 10, 12). She names Continental Insurance Company (Continental) as a Defendant because it insured Negrotto as a notary public in the State of Florida (*id.* at 6, 9,10, 12). Plaintiff appears to name Accredited

Surety and Casualty Company, Inc., and ABC Errors & Omissions Insurance Company because they are insurers of U.S. Title (*id.* at 3).

As previously noted, Plaintiff asserts claims of fraud, misuse of a notary seal, alteration of a security instrument, violations of the Mississippi Consumer Mortgage Protection Act, and violations of federal law TILA and RESPA. As relief, she seeks an order voiding all of the closing documents notarized by Defendant Negrotto, including the security instrument, granting her the right to rescind the security instrument, and enjoining any party from enforcing the promissory note (Doc. 133 at 13). She also seeks compensatory damages from Negrotto, U.S. Title, Universal, and Continental (*id.*).

In MERS' alternative motion to dismiss or transfer venue, MERS states that six months prior to Plaintiff's initiating the instant lawsuit, Plaintiff initiated a lawsuit in the United States District Court for the Southern District of Mississippi, Case No. 1:08cv195-LG-RHW, based upon the same facts and seeking the same relief as the instant lawsuit, particularly as it relates to the security instrument (*see* Doc. 138 at 2–3; Doc. 15, Ex. C). MERS states Plaintiff named Defendants Negrotto and U.S. Title in both suits, as well as CountryPlace Mortgage, Ltd, who is essentially the same Defendant as MERS in the instant case, as MERS was named in this case merely as the nominee for CountryPlace Mortgage Ltd (Doc. 138 at 2). The Mississippi lawsuit was ordered to arbitration, and on July 7, 2009, the arbitrator awarded in favor of CountryPlace Mortgage, Ltd. (*id.* at 2–3; Ex. 1). According to the electronic docket in that case, litigation is ongoing. *See* Hamel-Schwulst v. Country Place Mortgage, Ltd., et al., No. 1:08cv195-WJC-JMR, Online Docket for United States District Court Southern District of Mississippi.

In support of its venue argument, MERS states that venue is proper in the federal district court for the Southern District of Mississippi, not this district, because the subject real property is located in the Southern District of Mississippi, a substantial part of the events giving rise to this action occurred there, including the real estate transaction involving the loan documents that are the subject of this lawsuit, and the parties to the security instrument agreed that Mississippi would be the governing jurisdiction and law over any disputes concerning the security instrument (Doc. 138 at 2, 6–7). MERS further asserts Plaintiff filed the instant action only in an attempt to forum shop

and obtain a different result than the nearly identical Mississippi lawsuit that she filed six months prior to filing the instant lawsuit, because she was unhappy with the direction her Mississippi lawsuit was taking (*id.* at 7). MERS requests that this court dismiss this case for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or transfer the case to the United States District Court for the Southern District of Mississippi, pursuant to 28 U.S.C. § 1406(a), where it may be consolidated with the Mississippi lawsuit (*id.* at 4–7, 9). Defendants Universal Surety of America and The Continental Insurance Company adopted MERS' venue arguments and incorporated them in their jointly filed motion to dismiss or transfer venue (*see* Doc. 145 at 4).

Because the basis for federal jurisdiction in this case is not solely diversity of citizenship, venue is governed by 28 U.S.C. § 1391(b), which provides, in relevant part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, <u>except as otherwise provided by law</u>, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added).

In the instant action, Plaintiff asserts violations of RESPA. Venue is proper under RESPA "in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred." 12 U.S.C. § 2614. Plaintiff's property is located in Mississippi, and most or all of the alleged RESPA violations occurred in Mississippi (*see* Doc. 133 at 11, 12). Therefore, venue is proper in the Untied States District Court for the Southern District of Mississippi. *See, e.g.*, <u>Sicienski v. Saxon Mortgage Servs., Inc.</u>, No. 3:07cv243, 2007 WL 2071711, at *1 (E.D. Va. July 11, 2007) (venue for action alleging common law defamation and violation of RESPA was not proper in Richmond Division of United States District Court for Eastern Division of Virginia, but in Alexandria Division of that District, because property was located in Alexandria Division, and plaintiff did not contend that violation at issue occurred in Richmond Division); <u>Price v. Countrywide Home Lonas, Inc.</u>, No. Civ. A. CV205-015, 2005 WL 2354348, at **5–6 (S.D. Ga. Sept. 26, 2005) (action asserting RESPA

violations was properly venued where property was located); <u>Webb v. Chase Manhattan Mortgage Corp.</u>, No. 04-CV-07940(GBD), 2005 WL 106896, at *1 (S.D.N.Y. Jan. 18, 2005) (suit alleging violations of RESPA and New Jersey state law was not properly brought in Southern District of New York where complaint clearly alleged that subject properties were located in Tennessee and Colorado, and wrongful conduct was not alleged to have occurred in New York); <u>Becker v. Chicago Title Ins. Co.</u>, No. Civ. A. 03-2292, 2004 WL 228672, at **1–2 (E.D. Pa. Feb. 4, 2004) (venue for action alleging violations of RESPA and Pennsylvania Unfair Trade Practices and Consumer Protection Law, as well as common law claims of breach of settlement agreement, negligent supervision, civil conspiracy, and unjust enrichment, was proper in Eastern District of Pennsylvania because the real estate closings in question occurred there).

The RESPA venue provision notwithstanding, venue is not proper in this district under the general federal venue statutes. Although Plaintiff alleges in her complaint that jurisdiction of this case is based on diversity of citizenship (*see* Doc. 133 at 12), she alleges violations of RESPA; therefore, jurisdiction is founded on federal question jurisdiction as well. Because jurisdiction is not founded only on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(b)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[2, 3] 28 U.S.C. § 1391(b)(2). In assessing whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular judicial district, courts should consider "only those acts and omissions that have a close nexus to the wrong." *See* <u>Jenkins Brick Co. v. Bremer</u>, 321 F.3d 1366, 1372 (11th Cir. 2003) (interpreting § 1391(a)(2)). Only the events that directly give rise to a claim are relevant; and of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered. *See id.* at 1371. When "material acts or omissions within the forum bear a 'close nexus' to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the

---

[2] Plaintiff does not allege that all Defendants reside in Florida; therefore § 1391(b)(1) is inapplicable.

[3] Even if jurisdiction was founded solely on diversity of citizenship, the venue analysis would be the same, since the statutory language of § 1391(b)(2) is identical to the language of § 1391(a)(2).

substantiality necessary to support venue." <u>Daniel v. American Board of Emergency Medicine</u>, 428 F.3d 408, 433 (2d Cir. 2005) (citing <u>Jenkins Brick Co.</u>, 321 F.3d at 1372). On a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of showing that venue in her chosen forum is proper. <u>Wai v. Rainbow Holdings</u>, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). *But see* <u>Barker v. New Energy Corp.</u>, 2006 WL 3391347 (S.D. Ga. 2006) (noting split in authority regarding which party bears the burden of proof on a motion to dismiss for improper venue but accepting majority view that favors placing the burden on plaintiff). In considering a motion under Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true. <u>Wai</u>, 315 F. Supp. 2d at 1268. A court may also "consider matters outside the pleadings if presented in proper form by the parties." <u>MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.</u>, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (2d ed.1990)). Where there is a conflict between allegations in the complaint and evidence outside the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." <u>Wai</u>, 315 F. Supp. 2d at 1268.

In the instant case, Plaintiff has failed to satisfy her burden of showing that venue in the Northern District of Florida is proper. The events or omissions giving rise to Plaintiff's claims are the following: (1) Defendant Negrotto's obtaining his Mississippi notary commission based upon the misrepresentation that he was domiciled in Mississippi, (2) Negrotto's misrepresenting his legal authority to notarize documents executed by Plaintiff at the real estate closing on November 26, 2007; (3) Negrotto's notarizing the security instrument and other documents at the closing knowing that doing so was illegal in light of his financial interest in U.S. Title (the named trustee in the security instrument); (4) Negrotto's affixing his Mississippi notary seal to the security instrument after the closing; (5) Defendant Effler's signing the security instrument as a witness to Plaintiff's signature even though she did not actually witness it; (6) Negrotto's recording the security instrument in Harrison County, Mississippi knowing that it included false witness signatures; (7) Negrotto's failing to inspect the subject property prior to obtaining title insurance and conducting the closing; (8) Negrotto's conducting the closing knowing that the corporation named as trustee in the security instrument was improperly identified as "U.S. Title" (instead of its legal name U.S. Title & Real

Estate Closing Services, Inc.); (9) Negrotto's failing to provide Plaintiff a notice of her right to cancel the security instrument; and (10) Negrotto's failing to provide Plaintiff a conformed copy of the security instrument

Although Defendant Effler signed the security instrument as a purported witness in Florida, and Negrotto affixed his notary seal to the security instrument in Florida, and these are relevant events, Plaintiff has failed to carry her burden of showing that these events played a substantial role in the execution of the loan documents, which is the event that gave rise to Plaintiff's claims. The location hosting a "substantial part" of the events underlying this action is Mississippi, where the closing occurred. Additionally, the property that is the subject of the real estate transaction at issue, the Woodman Avenue property, is located in Mississippi. Therefore venue is not proper in Florida. *See, e.g.,* Wilcox v. Capital Mortgate Corp., No. CV507-015, 2008 WL 3927281, at *3 (S.D. Ga. Aug. 25, 2008) (venue for action alleging defendant mortgage company engaged in abusive lending practices in connection with two loans secured by plaintiff to construct church in Southern District of Georgia, and mortgage company violated plaintiff's due process rights in foreclosing on same property, was proper in Southern District of Georgia, pursuant to 28 U.S.C. § 1391(b)(2), because facts giving rise to dispute occurred there). Moreover, the fact that Plaintiff originally brought her claims in Mississippi prior to initiating the instant lawsuit suggests that she recognizes that Mississippi is the appropriate venue for her claims (*see* Doc. 15, Exs. C, D).

In light of the determination that venue is not proper in this district, the court must either dismiss the case or transfer it to the Southern District of Mississippi. The federal venue provisions provide that "[t]he district court of a district in which is filed a case laying venue in the wrong district . . . shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). In the instant case, the undersigned deems it in the interest of justice to transfer this case to the Southern District of Mississippi. This case could have and should been brought in the Southern District of Mississippi because that court has subject matter jurisdiction over Plaintiff's RESPA claims, and venue is proper there because the subject property is located there and the alleged violations occurred there. Furthermore, Plaintiff originally brought an action, alleging the same facts and nearly identical claims and seeking the same

relief, in that district, and proceedings in that parallel litigation appear to be ongoing. *See* Hamel-Schwulst v. Country Place Mortgage, Ltd., et al., No. 1:08cv195-WJC-JMR, Online Docket for United States District Court Southern District of Mississippi. Therefore, the interest of justice weigh in favor of transfer to the United States District Court for the Southern District of Mississippi.

Finally, even if venue was proper in this district, the case should be transferred to the Southern District of Mississippi pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses and in the interest of justice.[4]  A district court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a).  To transfer an action under section 1404(a) the following criteria must be met:  (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. *See* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).  The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum, the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, the location of relevant documents, the availability of compulsory process for witnesses, the financial ability to bear the cost of the change, and trial efficiency. *See* Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996).  Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice. *See* In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ( per curiam).  Indeed, the Eleventh Circuit has instructed that district courts should be cautious in transferring actions, stating that "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." Robinson, 74 F.3d at 260.

The decision to transfer an action pursuant to § 1404(a) is left to the "sound discretion of the district court and [is] reviewable only for an abuse of that discretion." Roofing & Sheeting Metal Serv. v. La Quinta Motor Inns, 689 F.2d 982, 985 (11th Cir. 1982); *see also* Brown v. Connecticut

---

[4] As explained in Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal.  By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there."

Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991). Such transfers may be made sua sponte by the district court. Mills v. Beech Aircraft Corp., 886 F.2d 758, 761 (5th Cir. 1989); Robinson v. Madison, 752 F. Supp. 842, 846 (N.D. Ill. 1990) ("A court's authority to transfer cases under § 1404(a) does not depend upon the motion, stipulation or consent of the parties to the litigation."); Empire Gas Corp. v. True Value Gas of Florida, Inc., 702 F. Supp. 783, 784 (W.D. Mo. 1989); accord Roofing & Sheeting, 689 F.2d at 991 n.14.

In this case, analysis of the relevant factors leads the undersigned to conclude that the convenience of the parties and witnesses and the interest of justice favor transfer. With regard to the first factor, Plaintiff's initial choice of forum, Plaintiff initially chose the Southern District of Mississippi as the forum for litigating her claims and six months thereafter initiated the instant litigation in the Northern District of Florida, for unknown reasons. The convenience of the parties weighs in favor of transfer to Mississippi, as Plaintiff and some of the Defendants are already litigating a nearly identical case there, and it is likely that the instant case would be consolidated with the other case. As to convenience of witnesses, it appears that most of the witnesses are party witnesses. The non-party witnesses would likely be the non-parties who attended the closing, who Plaintiff identifies as Mr. George Stevens, General Manager of Palm Harbor Homes, Inc., Superstore, located in Gulfport, Mississippi, and Jacqueline Carr, Plaintiff's "General and Medical Power of Attorney," whose location is not provided (see Doc. 1 at 4). Compulsory process for Mr. Stevens would be available in Mississippi. Compulsory process would not likely be needed for Ms. Carr, since she would likely be a cooperative witness for Plaintiff. Access to sources of proof, including relevant documents, would be easier in Mississippi, since the subject property is located in Mississippi; the real estate transaction at issue occurred there; and the security instrument was recorded there. The financial cost of change of venue would be little, since the case would likely be consolidated with the case already pending in Mississippi. Additionally, in light of the parallel litigation pending in Mississippi and the fact that Mississippi law governs Plaintiff's non-federal claims, trial efficiency weighs in favor of transfer. Finally, local interest in this controversy is strong in Mississippi and almost non-existent in Florida. Therefore, consideration of the relevant factors leads the undersigned to conclude that this action should be transferred to the United States District

Court for the Southern District of Mississippi.  *See* <u>In re Peregoy</u>, 885 F.2d 349 (6th Cir. 1989) (action involving title to oil-rich land in Texas was properly transferred to district court in Texas for convenience of parties and witnesses, in interest of justice, in view of applicability of Texas law, location of title information and key witnesses, familiarity of federal and state courts in Texas with matter, and lack of any connection of action with present forum); *see also* <u>Shawnee Tribe v. U.S.</u>, 298 F. Supp. 2d  21 (D.D.C. 2002) (venue for Indian tribe's action, claiming entitlement to military reservation land that federal government was planning to dispose of, would be transferred from District of Columbia to Kansas, where reservation was located; suit could have been brought there initially, government's decisionmaking process had largely occurred in field offices, Kansas had significant interest in deciding local controversy, and related case was already pending there); <u>In re New York Trap Rock Corp.</u>, 158 B.R. 574 (S.D.N.Y 1993) (absent countervailing factors, it will be appropriate to transfer case involving real estate sales contract to district in which real property is located); <u>Hunter v. Mozil</u>, No. C 08-42133 PJH, 2009 WL 5130453, at *5 (N.D. Cal. Dec. 5, 2008) (relevant factors favored transfer of action alleging violations of RESPA, the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 41, *et seq.*; the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461, *et seq.*; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; and unspecified "Fair Lending" regulations statutes and "Housing and Urban Development" regulations from Northern District of California to Southern District of Texas, since Northern District of California had no connection with facts alleged, property was located in Texas, loan was negotiated in Texas, deed of trust was recorded in Texas, two co-borrowers lived in Texas, other than plaintiff and possibly one other witness, any witnesses were likely to be located in Texas, as was the physical and documentary evidence, Texas courts were more familiar with Texas property law than were the courts of California, and local interest in the controversy was strong in Texas and almost non-existent in California).

For the abovementioned reasons, it is respectfully **RECOMMENDED**:

1.	That MERS' Amended Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) and (6) or Alternatively Motion to Transfer Venue Under 28 U.S.C. § 1406(a) and Supporting Memorandum (Doc. 138) and Defendants Universal Surety of America and The Continental Insurance Company's

Motion to Dismiss Plaintiff's Third Amended Complaint or Alternatively Motion to Transfer Venue (Doc. 145) be **GRANTED** to the extent Defendants seek transfer of this action to the United States District Court for the Southern District of Mississippi.

2.      That the clerk **TRANSFER** this case to the United States District Court for the Southern District of Mississippi.

3.      That the clerk close this case.

At Pensacola, Florida, this 8<u>th</u> day of January 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**